JENNIE BOYD v. MISSOURI PACIFIC RAIL- WAY COMPANY, Appellant.

Division Two, July 1, 1911.

1. **HAND CAR: "Car" Under Sec. 5425, R. S. 1909.** A hand car used by section men on a railroad in going to and from their work, is a "car" within the meaning of Sec. 5425, R. S. 1909, allowing damages for death caused by the negligence of a co-employee "whilst running, conducting or managing any locomotive, car or train of cars," etc.

2. **VICE-PRINCIPAL: Section Foreman.** When section men of a special gang are in transit to their labors on a hand car, and their foreman is present with them, such foreman is a vice-principal.

3. **NEGLIGENCE: Assumption of Risk.** When section men of a special gang are in transit to their labors on a hand car, and their foreman is present with them, individuality is swallowed in the control and responsibility of the foreman, and the section men do not assume the risk arising from the failure of said foreman to stop the hand car and listen, and, if necessary, send a man ahead, to avoid collision with trains.

4. ————: **Petition: Under Sec. 5425, R. S. 1909.** The petition in this case states that on the day of the injury deceased, employed by defendant as a section hand, was helping operate a hand car on defendant's railroad in transit to the spot of his labors. That said car was under the control and superintendence of the section foreman as the agent of defendant. That there was a heavy fog, and the rails were very wet, slick and slippery. That at the point where the injury occurred there is a sharp curve. That it was the duty of the foreman, before entering said curve, to discover whether a train was coming thereon. That said foreman negligently, recklessly and unskillfully failed to discover whether a train was coming before entering the curve aforesaid, and in attempting to escape from an approaching train, which was about to collide with said hand car, deceased was run over and killed by said train. *Held,*

that this petition states a cause of action under Sec. 5425, R. S. 1909, and is broad enough to cover plaintiff's claim that the failure of the foreman to stop the hand car and listen, and, if necessary, send a man ahead, was negligence.

5. ————: Contributory. A section hand stepped off a hand car, undertook to take hold of it to aid in taking it from the track, and fell between the rails while a train approaching at thirty miles an hour was only a hundred feet away. It cannot be said that his failure to get off the track before the train struck him was the result of his own negligence.

6. ————: Sec. 5425, R. S. 1909, Both Penal and Compensatory: Elements of Damage. Section 5425, R. S. 1909, which declares that in cases in which death is caused by the negligence of a co-employee of deceased, the employer of such co-employee "shall forfeit and pay as a penalty" for such death "the sum of not less than two thousand and not exceeding ten thousand dollars in the discretion of the jury," is not only a penal statute, but one compensatory or remedial as well. When a widow sues under this statute for damages for the loss of her husband, the pecuniary loss of plaintiff and the circumstances of defendant's negligence are elements to be considered by the jury, but the pain and suffering of deceased, or the mental pain, anguish or loss of society sustained by plaintiff on account of his death, are not such elements.

7. ————: Sec. 5425, R. S. 1909: Suit by Widow for Damages for Loss of Husband: Evidence: Support of Minor Children. Under Sec. 5425, R. S. 1909, which declares that in cases in which death is caused by the negligence of a co-employee of deceased the employer of such co-employee "shall forfeit and pay as a penalty" an amount to be fixed in the discretion of the jury between two set limits, a widow who seeks damages for the death of her husband may show in evidence the number and ages of her minor children as bearing on her pecuniary loss, and it is not error to permit them to remain in the court room during the trial.

8. ————: Instruction: Defendant Not Bound by Refused. Where defendant, in a suit for damages for the loss of plaintiff's husband, asks the court to instruct the jury, that they "can only allow her for the actual pecuniary loss which she has sustained by reason of the death of her husband," and such instruction is refused, then defendant is not bound by that theory of the law. But the fact that defendant asked such an instruction shows that it then occupied that position.

9. ————: Sec. 5425, R. S. 1909: Suit by Widow: Elements of Damage: Instruction. In a suit by a widow under Sec. 5425, R. S. 1909, for damages for the loss of her husband, an instruction should not be given which tells the jury that in estimating

Boyd v. Railroad.

her damage they can consider only her money loss "without any reference to any other member of the family," and that they should determine the deceased husband's actual earning capacity and what portion of his earnings would have been expended for her sole benefit. In the first place, the burden cast upon the widow of supporting minor children is an element of damage, and in the second place, the instruction should be broad enough to include the "daily ministrations of a whole life."

10. ———: ———: **Instruction: Involved and Uncertain.** An instruction, set out in the opinion, in a suit for damages for death of plaintiff's husband through the negligence of a co-employee, is too involved and uncertain, but the court is not prepared to hold it fatally erroneous.

11. ———: ———: **No Measure of Damages: Discretion of Jury.** Section 5425, R. S. 1909, does not call for any measure of damages. It provides for a minimum and a maximum and the exercise of a discretion between these extremes. As the statute has a remedial side, the jury may consider the extent of the injury; as it has a penal side, the jury has a right to consider the facts of defendant's negligence.

12. ———: ———: **Instruction: No Evidence to Support: "Aggravating Circumstances."** In a suit under Sec. 5425, R. S. 1909, it is reversible error to give an instruction which tells the jury that they may take into consideration all the facts and circumstances detailed in evidence, "in mitigation or aggravation of the negligent acts of the defendant found," when in fact there is no evidence of any aggravating circumstances. It is error so to instruct except where punitive or exemplary damages are allowed on account of wilfulness, malice, wantonness, recklessness or conscious negligence or wrong intent. And this proposition is given additional force by Sec. 1796, R. S. 1909, providing that the amount of exemplary or punitive damages sought shall be separately stated in the petition and in the verdict.

Appeal from Barton Circuit Court.—*Hon. J. B. Johnson,* Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* with *R. T. Railey & Son* for appellant.

(1)  The alleged acts of negligence as set out in petition are wholly insufficient to constitute a cause of

action against this defendant under section 5425, R. S. 1909. They are clearly outside of said statute, and are not comprehended therein. The foregoing section is in derogation of the common law, and should be strictly construed. In other words, it should not be extended to include hand cars, which were not named therein, and which are not public conveyances. Clark v. Railroad, 118 S. W. 45; Bates v. Sylvester, 205 Mo. 494; Casey v. Railroad, 205 Mo. 721; Packard v. Railroad, 181 Mo. 421; Barron v. M. L. & Z. Co., 172 Mo. 233; Hennessy v. B. B. Co., 145 Mo. 113; Culbertson v. Railroad, 140 Mo. 62; King v. Railroad, 98 Mo. 235; Barker v. Railroad, 91 Mo. 94; Crohn v. Tel. Co., 131 Mo. App. 313; Casey v. Railroad, 116 Mo. App. 235; 1 White's Personal Injuries on Railroads, secs. 42 and 321. If the Legislature had intended that hand cars should be classed with locomotives, cars and trains of cars, it would have said so in passing the amendment of 1905. It named other public conveyances, which had not been mentioned before, but in no manner intimates that hand cars used for the company's private business should be included within said section. This court has uniformly held that section 5425 should be construed to apply to public conveyances. It will readily be seen that a hand car, used exclusively by the employees of a railway company in the transaction of its private business, cannot be said to be a public conveyance. Casey v. Railroad, 205 Mo. 723; Higgins v. Railroad, 197 Mo. 312; Crohn v. Tel. Co., 131 Mo. App. 313. Even, therefore, if the crews in charge of the hand cars had been guilty of negligence—which is not true as a matter of fact—in the management of said cars, the plaintiff could not have maintained an action under the foregoing section, based on said negligence. The petition, however, in direct terms, pleads that the freight train mentioned in evidence ran over and killed deceased. As heretofore suggested, it is not charged that any of the train crew were guilty of negligence.

(2) The only charge of alleged negligence contained in the petition, is to the effect that defendant was guilty of negligence in failing to learn of the approach of said freight train, and in permitting the section crews to enter said curve, when they were liable to collide with said freight train in so doing. Even if these facts were true, which we deny, still no cause of action can be maintained under section 5425 based on such alleged negligence. Elliott v. Railroad, 67 Mo. 272; Holmes v. Railroad, 69 Mo. 538; Flynn v. Railroad, 78 Mo. 196; Crumpley v. Railroad, 98 Mo. 34; Parsons v. Railroad, 94 Mo. 286; King v. Railroad, 98 Mo. 235; Rapp v. Railroad, 106 Mo. 423; Culbertson v. Railroad, 140 Mo. 37; Anderson v. Railroad, 196 Mo. 464. If the railway company had failed through its foreman, before leaving the town of Liberal, to ascertain when the train was coming which killed deceased, it was an independent act of negligence, if defendant was negligent, and had no connection whatever with the operation of the train and hand cars at the time and place of accident. (3) The deceased, with full knowledge of all the facts, and of the risk which he assumed, and the dangers which he was encountering, passed over or into said curve, without protest or objection, and thereby assumed all risks of injury under the circumstances detailed in this case. The plaintiff is not therefore entitled to recover herein. Jackson v. Railroad, 104 Mo. 448; Thomas v. Railroad, 109 Mo. 187; Ring v. Railroad, 112 Mo. 220; Nugent v. Milling Co., 131 Mo. 241; Halloran v. I. & F. Co., 133 Mo. 470; Roberts v. Tel. Co., 166 Mo. 370; Evans v. Railroad, 178 Mo. 508; Helm v. Railroad, 185 Mo. 212; Mathis v. S. Y. Co., 185 Mo. 434; Clancy v. Railroad, 192 Mo. 615; Chrismer v. Tel. Co., 194 Mo. 189; Brockschmidt v. Railroad, 205 Mo. 435; Lynch v. Railroad, 208 Mo. 32; Sissel v. Railroad, 214 Mo. 515; Welch v. Stone Co., 64 Atl. 392; E. G. & E. L. Co. v. Raley, 76 N. E. 548; Railroad v. Hemphill, 86 S. W.

350; Kistner v. A. S. F., 84 N. E. 44; Cahill v. Railroad, 205 Mo. 407; Degonia v. Railroad, 224 Mo. 564; 3 Elliott on Railroads (1 Ed.), sec. 1298; Foley v. G. R. G. Co., 87 N. W. 53; Yunkes v. R. S. Co., 115 N. W. 348; Baumler v. N. B. Co., 50 Atl. 841. As heretofore shown, no other section man of either crew sustained injury except deceased. He was in plain view of the train, with his face looking toward it, when it was a hundred feet off, and remained there on the track until the hand car ran up over him and the engine struck him and the hand car at the same instant. The undisputed testimony shows that he saw the train, knew he was between the rails, when a single step would have removed him to a place of safety, and remained there stumbling around between the rails, without any apparent reason therefor, until run over and killed. If he did not assume the risk in remaining upon the track under such conditions, regardless of any alleged negligence of defendant, then we fail to understand what assumption of risk means under the laws of this State. Helm v. Railroad, 185 Mo. 223; Clancy v. Railroad, 192 Mo. 656; Brockschmidt v. Railroad, 205 Mo. 435; Lynch v. Railroad, 208 Mo. 32; Sissel v. Railroad, 214 Mo. 515. (4) The deceased at the time and place of accident was not only guilty of negligence, but actual recklessness, and by reason thereof lost his life without the fault of this defendant. The court below should therefore have directed a verdict for defendant, and having failed to do so, we ask that the cause be reversed, without remanding, and that judgment be entered here for defendant. Sissel v. Railroad, 214 Mo. 515; Holland v. Railroad, 210 Mo. 338; Cahill v. Railroad, 205 Mo. 393; Brockschmidt v. Railroad, 205 Mo. 445; McGrath v. Railroad, 197 Mo. 97; Clancy v. Railroad, 192 Mo. 615; Wheat v. Railroad, 179 Mo. 579; Evans v. Railroad, 178 Mo. 514; Loring v. Railroad, 128 Mo. 359. (5) Plaintiff's instruction I. modified and given by the court, is clearly erroneous.

We know of no rule of law which leaves it to the jury, as does paragraph 2 of this instruction, to determine for itself the duty devolving by law upon defendant's servants, without any guidance from the court. Johnson v. Railroad, 117 Mo App. 310; Ravenscraft v. Railroad, 27 Mo. App. 623; Goodwin v. Railroad, 75 Mo. 75; Gurley v. Railroad, 93 Mo. 450; Magrane v. Railroad, 183 Mo. 132; Baker v. L. & N. Term. Co., 61 S. W. 1031. Paragraph 3 proceeds as an independent proposition, and gives the jury no guide whatever as to what it takes to constitute negligence, nor is it attempted to be limited to the matters complained of in the petition. It authorized the jury to return a verdict for plaintiff, based on any supposed negligence, whether alleged in the petition or not, which existed on the part of foreman Mead in the performance of his alleged duties. It was, therefore, clearly erroneous. Beave v. Railroad, 212 Mo. 351; Davidson v. Railroad, 211 Mo. 361; Kirkpatrick v. Railroad, 211 Mo. 85; Black v. Railroad, 117 S. W. 1142; Roscoe v. Railroad, 202 Mo. 588; McGrath v. Railroad, 197 Mo. 105; Hufft v. Railroad, 121 S. W. 120; Crumpley v. Railroad, 98 Mo. 38; King v. Railroad, 98 Mo. 235; Rapp v. Railroad, 106 Mo. 428; Senn v. Railroad, 135 Mo. 517; Culbertson v. Railroad, 140 Mo. 63; Anderson v. Railroad, 196 Mo. 464. (6) Plaintiff's instruction 2 as given is palpably erroneous. The court below tried the case on the theory that plaintiff was entitled to recover, if at all, not less than two thousand dollars as a penalty, and might allow any amount above that up to ten thousand dollars as a part of the penalty provided for in said section, gauged by the degree of negligence on the part of the defendant that was shown in the testimony. There was no evidence in this entire record which would warrant the court or jury in inflicting upon defendant punitive or exemplary damages. Said section 5425, prior to the amendment of 1905, was so strictly construed, that a

plaintiff could not even sue for $4,500 under said section, but was compelled to sue for the full amount, to-wit, $5000 or go out of court. Casey v. Railroad, 116 Mo. App. 235; 205 Mo. 721; King v. Railroad, 130 Mo. App. 368. Said instruction was clearly erroneous in authorizing the jury to consider the mitigating or aggravating acts of negligence on the part of the defendant. Morgan v. Durfee, 69 Mo. 478; Stoher v. Railroad, 91 Mo. 510; Parsons v. Railroad, 94 Mo. 299; Barth v. Railroad, 142 Mo. 558; R. S. 1899, secs. 594 and 595. (7) Plaintiff sued under Sec. 5425, R. S. 1909, and recovered thereunder a verdict of $6000. She produced in court at the commencement of the trial her five minor children, the youngest in her arms. The defendant, through its counsel, before the trial commenced, requested the court to exclude from the court room the children of said plaintiff, for the obvious reason that they were produced for the purpose of creating a sympathy in behalf of plaintiff. This request was overruled and exceptions duly saved. Plaintiff's instructions 1 and 2 and the closing argument of plaintiff's counsel disclose, conclusively, that the sole purpose in having these children before the jury was to create a sympathy in behalf of plaintiff, and to augment the damages in this cause. The plaintiff, in suing under the above statute, would have no legal right to even inquire as to the number or ages of her children before the jury, much less to parade them in open court as was done in this case. Williams v. Railroad, 123 Mo. 584; Mahaney v. Railroad, 108 Mo. 191; Dayharsh v. Railroad, 103 Mo. 570; Stephens v. Railroad, 96 Mo. 207.

*Cole, Burnett & Moore, Mathew McBride* and *John H. Taylor* for respondent.

(1) By section 5425, it is not necessary that the car be a public conveyance, unless the person injured is a passenger. The statute includes car, and under

the law a hand car is a car. Railroad v. Crocker, 95 Ala. 412; Thomas v. Banking Co., 38 Ga. 222; Perez v. Railroad, 28 Tex. Civ. App. 255. (2) In this case, under the evidence, there is no assumption of risk by deceased shown, and no contributory negligence. The foreman's negligence in going out on the track with a hand car at a time when a train was due, was the cause of the injury. Kube v. Railroad, 103 Mo. App. 582; Walsh v. Transportation Co., 52 Mo. 434; Weller v. Railroad, 120 Mo. 635; Bluedorn v. Railroad, 108 Mo. 439. Where there is reason to apprehend that the track may not be clear, the liability is not limited to want of care after the discovery of the danger. Powell v. Railroad, 59 Mo. App. 626; Dunkman v. Railroad, 95 Mo. 244. The rule is well settled in this State that, notwithstanding the injured party may have been guilty of contributory negligence, a railroad company is liable for the injury if it could have been prevented by the exercise of reasonable care on the part of the company after the discovery of the danger in which the injured party stood; or, if the company failed to discover the danger through its own recklessness, when the exercise of ordinary care would have discovered it and avoided the injury. Powell v. Railroad, 59 Mo. App. 626. It is the well settled and constantly recognized exception to the general rule that the contributory negligence of the person injured will bar a recovery of damages for an injury, that contributory negligence is not to be imputed to the person injured because he has acted erroneously under impulse of fear produced by the negligence of the defendant, although if he had acted as a man having time to deliberate should have acted under the circumstances he would not have received the hurt. Dutzi v. Geisel, 23 Mo. App. 683; Herriman v. Railroad, 27 Mo. App. 435. One is not chargeable with negligence because when exposed to sudden danger he does not adopt the safest and best course to avoid injury. When

suddenly exposed to great and imminent danger, he is not expected to act with that degree of prudence and wisdom which would otherwise be required of him. Dickson v. Railroad, 124 Mo. 140; Adams v. Railroad, 74 Mo. 533; Siegrist v. Arnot, 86 Mo. 200; Railroad v. Rhodes, 56 Ga. 645. (3) The court is not required to define negligence. This is a word the meaning of which is well understood and no definition of it was necessary. Sweeney v. Railroad, 150 Mo. 401. (4) The section foreman was the vice-principal of defendant. Russ v. Railroad, 112 Mo. 45; Brothers v. Cartter, 52 Mo. 372; Gormly v. Vulcan Iron Works, 61 Mo. 492; Cook v. Railroad, 63 Mo. 397; Sullivan v. Railroad, 107 Mo. 66; Haworth v. Railroad, 94 Mo. App. 215. He is a vice-principal who is entrusted by the master with power to superintend, direct or control the workman in his work, and for negligence in such superintendence, direction or control, the master is liable. Moore v. Railroad, 85 Mo. 588; Stephens v. Railroad, 86 Mo. 221; Smith v. Railroad, 92 Mo. 359; Hoke v. Railroad, 88 Mo. 360; Miller v. Railroad, 109 Mo. 350. The duty of Boyd, the deceased, was one of subordination and obedience to the master, and he had to rely upon the superior knowledge and skill of the foreman. Shartel v. St. Joseph, 104 Mo. 114. The foreman's negligence is the negligence of the employer. Stephens v. Railroad, 96 Mo. 207; Moore v. Railroad, 85 Mo. 588. (5) The plaintiff having her children in the court room when they were asked to be excluded by defendant's counsel is not error. The father during his lifetime was bound to maintain the children. On his death and during her widowhood, at least, this liability was cast upon the mother. Hence, it was proper to show the extent of this burden which the father's death placed on the plaintiff. Tetherow v. Railroad, 98 Mo. 84. A widow suing for the death of her husband, an employee of the defendant railroad, and charged to have been

killed by its negligence, can testify as to the number of her infant children. Soeder v. Railroad, 100 Mo. 673; O'Mellia v. Railroad, 115 Mo. 205; Haehl v. Railroad, 119 Mo. 325; Fisher v. Central Lead Co., 156 Mo. 492.

ROY, C.—This is an action brought in the circuit court of Barton county, on November 29, 1905, under section 5425, Revised Statutes 1909, on account of the death on July 29, 1905, of plaintiff's husband, Charles J. Boyd, while he was one of a special gang of laborers on a hand car going to their work of surfacing the roadbed of defendant's railroad.

There was a trial September 19th and 20th, 1906, resulting in a verdict for plaintiff for $6000, and defendant has perfected its appeal.

The petition is as follows:

"Plaintiff states that on the .... day of .... 18.., she was lawfully married to Charles J. Boyd, deceased, late of Barton county, Missouri, and at the times hereinafter mentioned she was the lawful wife and is now the widow of said deceased, Charles J. Boyd.

"Plaintiff states that the defendant now is, and at all times hereinafter mentioned, was a railway corporation, duly organized and existing under and by virtue of the laws of the State of Missouri. That defendant owns and controls and operates a line of railroad, running through the counties of Jackson, Cass, Bates, Vernon and Barton in the State of Missouri, and particularly through and between the town of Nassau in Vernon county, Missouri, and the town of Liberal in Barton county, Missouri.

"Plaintiff states that on or about the 29th day of July, 1905, the said Charles J. Boyd, husband of plaintiff, being an employee of the defendant as a section hand, was engaged with others in running and operating a hand car on defendant's said railroad in going

to the place where they were engaged at work, and other section men were on a hand car following the said hand car upon which said Charles J. Boyd was, as aforesaid, at a distance of about sixty feet. That said hand cars were under the superintendence and control of one L. Mead, the section foreman, with authority over the said Charles J. Boyd and the other section men in running and operating said hand cars, and who controlled the movements of said hand cars as the agent of defendant. That at the time of running and operating said hand cars by the said foreman and section men as aforesaid, there was a very heavy fog, which prevented a person seeing a greater distance than about one hundred and eighty feet. And the rails of said railroad were very wet, slick and slippery and the brakes on said hand car were old and out of repair, which the said Mead well knew or by reasonable care could have known and which said brakes on said hand cars would not work.

"That at a point about one and three-fourths miles north of the said town of Liberal there is a sharp curve in the railroad track of defendant. That it was the duty of said Mead to see that the rear hand car was not run in such close proximity to the front hand car, on which the said Charles J. Boyd was, so as to endanger the men riding thereon, and that it was the duty of said Mead to see that the said hand cars were not run upon the railroad track so as to come in collision with any train running on said railroad, and it was the duty of said Mead to so inform himself as to the movements of trains on said railroad track, that said hand cars should not be run so as to conflict with any such trains. That it was the duty of said Mead, before entering said curve, to discover whether or not a train was coming thereon.

"But the said Mead on the 29th day of July, 1905, being then and there in charge of said hand cars as

236 Sup.—5

aforesaid, and the said Charles J. Boyd being engaged in running the front hand car aforesaid under the superintendence, control and management of him, the said Mead, the said Mead did run, operate and manage the said front hand car so carelessly, negligently, recklessly and unskillfully on said railroad northward from the said town of Liberal on the time of a train, which the said Mead then and there knew or ought to have known was approaching, from the north, and which the said Mead then and there knew or ought to have known was liable to collide with the said hand car going north, and the said Mead carelessly, negligently, recklessly and unskillfully caused and permitted said rear hand car to follow the front hand car at a distance of about sixty feet, and carelessly, negligently, recklessly and unskillfully failed to discover whether or not a train was coming before entering said sharp curve aforesaid with the hand cars aforesaid, that, at a point about one and three-fourths miles from the said town of Liberal and just after entering the sharp curve aforesaid, an engine and train of cars owned and operated by the defendant coming south on said track, without any notice of its approach, was about to collide with said hand car aforesaid on which said Boyd was employed, and while said Boyd was endeavoring to escape said collision and said approaching rear hand car he was run over and killed by said engine and train of cars of defendant aforesaid.

"That the death of the said Boyd as aforesaid was caused by the negligence, carelessness, recklessness and unskillfullness of the said Mead in so operating, running and managing said hand cars as aforesaid.

"Plaintiff states that the deceased, Charles J. Boyd, was run over and killed as aforesaid within six months next before the commencement of this suit.

"Wherefore plaintiff prays judgment against defendant for the sum of ten thousand dollars and for costs of suit."

That portion of the answer essential to the present hearing is as follows:

"Now comes the defendant, and for amended answer to plaintiff's petition, admits that Charles J. Boyd, at the time of his death, was the husband of said plaintiff. It admits that defendant at said time was a railroad corporation and running its line of road through Barton county, Missouri, as alleged in petition. It admits that on the 29th day of July, 1905, plaintiff's said husband was a section hand on defendant's road in Barton county, Missouri, and was killed by one of defendant's freight trains, running over said road on said date. It admits that on the date aforesaid there was a heavy fog prevailing at the place where said Boyd was killed. It admits that L. Mead, mentioned in petition, was defendant's foreman of extra gang in improving defendant's road at the time and place of accident. Said defendant denies each and every other allegation contained in said petition. Wherefore, it prays to be discharged with its costs.

"2. Said defendant, for further defense, states that said Charles J. Boyd, when killed as aforesaid, was on the front hand car, with said Mead, and not only had the same means of information which said Mead possessed as to the running of said trains and hand cars, but likewise of the danger to be apprehended from performing the labor which he was then doing, at the time and place of accident. Said defendant further avers, that said Boyd did have the same actual knowledge as to the running of said hand cars and of the danger to be apprehended, as was possessed by said Mead, at the time and place of accident. That with full knowledge of all the facts aforesaid, he continued on said front hand car with said Mead until the approach of said freight train which killed him, and without any negligence upon the part of said defendant or said Mead, he assumed all the risks inci-

dent to his employment and which resulted in his death. Wherefore, defendant prays to be discharged with its costs.

"3. Said defendant for further defense states, that said Charles J. Boyd, with full knowledge of all the facts set out in paragraph two hereof, was riding upon the front hand car with defendant's section foreman, L. Mead, and when the freight train approached which killed him, he had full notice of its approach when it was from one hundred and fifty to two hundred and fifty feet off, and although all the other section men got off the sides of the hand cars away from the railroad track in safety and removed the front hand car on which deceased was riding, in safety, yet said deceased negligently and carelessly jumped off said hand car at the rear end of same, between the rails of defendant's track, and remained there during the time said freight train was being run the distance aforesaid, when by the exercise of ordinary care he could have left said track and avoided his own death. That by reason of the premises, said Boyd was guilty of negligence and recklessness, not only directly contributing to, but producing his own death."

During the trial, the five children of plaintiff, from one to nine years old, were on the front seat in the court room, outside the bar, where the jury could see them.

At the beginning of the trial the following occurred:

"Mr. Railey: Now we ask to have these children excluded from the presence of the jury, on the ground, and for the reason, that in a case of this character it is entirely immaterial whether he has one child, or none, or more, and that it is evidently creating a sympathy for the plaintiff.

"The Court: Well, the court overrules that, if for no other reason, that if you exclude the children, you exclude the plaintiff from the court room. She

would have to go out and take care of them. Evident to the court they are all small children.

"Mr. Railey: That is exactly what we are objecting to; for the reason they create an undue sympathy. We except to the action of the court in permitting these children to remain in the court room in the presence of the jury."

Mrs. Jennie Boyd, the plaintiff, after being duly sworn, testified as follows:

"Mr. Railey: Now, then, we want to interpose the further objection that the plaintiff herself is produced as a witness, and presents in her arms while on the witness stand an infant, and we object to that for the same reasons assigned. Court: Suckling babe? Mr. Railey: Suckling babe; yes, sir. I understand your honor overrules the objection. Court: Yes, sir. Mr. Railey: We except."

The evidence for plaintiff was to the following effect:

That plaintiff and deceased were married in 1893. The deceased was thirty-nine years old when he was killed, and had been working on the railroad at Liberal in Barton county about three weeks and was getting $1.40 a day. He was in perfect health. He was a member of a special gang engaged in surfacing the road. He owned a small farm of five acres worth $500 encumbered for $200.

Lee Mead was foreman of the extra gang, having their headquarters at Liberal. On the morning of Boyd's death, the gang left Liberal about seven o'clock on two hand cars running about a hundred feet apart. Boyd was on the rear in the middle or on the right hand corner of the car, and Mead, the foreman, was on the front of the same car. They were going north and were about a hundred feet in a curve when they saw a freight train coming toward them from the northeast. The road going north at about a mile and three-quarters from Liberal curved to the northeast, and in

that curve was a cut, the bank on the east side being about eight feet high, with the ground sloping upward from the top of the cut. The curve was about 250 feet long. There was a heavy fog. There were seven men on the front car and nine on the rear one. A train could not be seen around the curve. The first to see the coming train was Mead, the foreman. He cried an alarm and jumped. Tom Milligan, who was on the east side, slipped his feet on the brake, and by the time he was off, Lee Mead and Joe Davis had the front end up going round with it to the west. It had not stopped when they took hold of it, but was hardly moving. They got it off so that the train just knocked off the hand holds.

Tom Milligan testified: ''I just got up about three or four steps on the bank and got turned around when it struck. I went up as quick as I could. All that we could see was Charlie sorter on his all-fours just in the track; when he rolled over on his back the hand car ran up on him to his arms. The freight train hit him just as the rear hand car ran on him. They just about met over him. The train was about 120 feet distant when the foreman yelled, and was going thirty miles an hour. I had a talk with Mr. Mead that morning. He said it was the morning freight that went through a little after six o'clock. I told him it wasn't because it wasn't time yet. He didn't say anything when I told him it wasn't time. He said he thought it had went through. I couldn't convince him that it hadn't. I told him it was a bad morning and we ought to have a flagman; it was a good morning to get caught. He didn't say a word.''

Ed Gresham testified: ''I was on the rear hand car. I saw the men on the front car jumping off. Two of them, Lee Mead and Joe Davis, went to setting it off. They started around with the car, and Mr. Boyd was on the hind end, and he got off behind, and it looked to me like he started to take hold, and the men went

round with the front end and he fell. The hind car was about two rails away. When he fell on his hands and knees, they went off with the car; he raised, look-ed like he started to raise; he got off, part off of his knees. I wasn't, of course, watching right particular about it, but he raised off of his knees partly and fell flat in the track and at that time the car ran up over him, probably half way over him, up partly on his body, and it looked like he kind o' raised his head, and the engine hit him about the same time. It was a slick, heavy, foggy morning. As we entered the curve, the hand cars were not stopped, and no caution was taken for the approach of trains. I was about the first one to the hand car that morning, and when I was about half a quarter from where the cars were, there was a train went through. We left Liberal about seven o'clock. In going out that morning, we did about as we had been doing while I was there. Our car was about 60 feet from the front car when I saw them get-ting off.''

Joe Davis testified on cross-examination: ''We started out about seven o'clock. The local freight, when it was on time, passed Liberal somewhere be-tween 6:30 and 7 o'clock. I think I heard it go through that morning a few minutes before we started. We had the same outfit that morning as usual, and went over the same route and over the same curve. The freight train was about 120 feet away when we first saw it. The hill in the curve and the fog prevented us from seeing it sooner. If there had been no fog, we could not have seen the train over 150 feet.''

Henry Cooper testified: ''I am section foreman at Liberal. My section is from Liberal south. It is the duty of the section foreman and foreman of a spe-cial gang to stop at hazardous places and listen, and, if necessary, to go around the curve and see and satis-fy ourselves that there was no train coming close enough but what we could come on around in safety.

If the local freight had passed and I were going out to work that morning as Lee Mead was, I would, on that morning, have taken the precaution to send somebody through, because it was foggy. If I were not expecting any train, that is a morning when a man is generally always cautious, if he is cautious in his life."

The defendant introduced no testimony. At the close of plaintiff's evidence, the defendant offered a demurrer to the evidence, which was refused. Thereupon the defendant asked and the court refused instructions A, B, C and D as follows:

"A. Under the pleadings and evidence in this cause, the jury are directed to return a verdict in favor of defendant."

"B. If the jury believe from the evidence, that deceased had the same knowledge, as well as means of information, as that possessed by section foreman Mead, in regard to the operation of the hand cars and freight train mentioned in evidence, and also had the same information and means of information possessed by said Mead, in regard to the danger to be apprehended in the running of said freight train and hand cars, as shown by the evidence, then he assumed the risk of injury and the plaintiff is not entitled to recover, regardless of all other facts in the case."

"C. The jury are instructed, that plaintiff cannot maintain this action under section 2864, Revised Statutes 1899, nor under said section as amended by the Session Acts of 1905, at pages 135-6. If therefore the jury should find for the plaintiff, in estimating her damages, you can only allow her for the actual pecuniary loss which she has sustained by reason of the death of her husband, and cannot take into consideration, in estimating the same, any pain or suffering endured by deceased, the plaintiff, nor any member of her family, nor can you consider any mental pain, anguish, or loss of society or companionship which said plaintiff or any member of her family may have

sustained on account of the injury and death of plaintiff's said husband. If you find for plaintiff, your verdict cannot exceed in any event, the sum of $5000. Even if the jury should find for plaintiff, yet in estimating her damages: 1st. You cannot consider or allow her anything on account of any pain or suffering which her said husband may have sustained. 2d. You cannot consider or allow her anything on account of her mental pain and suffering or wounded feelings, on account of her said husband's injuries and death. 3d. You cannot consider or allow plaintiff any damages on account of the loss of society or companionship, which either plaintiff or any one else may have sustained by reason of the injuries and death of plaintiff's said husband. 4th. If you find for plaintiff, in estimating her damages you can only take into consideration the actual money loss which she alone— without any reference to any other member of the family—has sustained by reason of her said husband's death, and in this connection you should only take into consideration his actual earning capacity, and determine from the evidence what portion of same would, to a reasonable degree of certainty, have been expended by her said husband out of said earnings, for her sole benefit, without regard to any other member of plaintiff's family."

The plaintiff asked, and the court gave, after modifying, the following instruction number 1:

"The court instructs the jury that it is charged in the petition and admitted in the answer that Charles J. Boyd, mentioned in the evidence, was at the time of his death, the husband of the plaintiff, Jennie Boyd; that it is charged in the petition and admitted in the answer that the defendant, on the 29th day of July, 1905, was a railroad corporation and running its line of road through Barton county, Missouri; that it is admitted by the defendant that on the 29th day of July, 1905, plaintiff's said husband, Charles J. Boyd,

was a section hand on defendant's road in Barton county, Missouri, and was killed on that date; it is also admitted by the parties that on the date aforesaid there was a heavy fog prevailing at the place where said Boyd was killed. It is admitted, as charged in the petition that L. Mead was defendant's section foreman of an extra gang at the time and place of said Charles J. Boyd's death. Now, if the jury shall find and believe from the evidence that said Charles J. Boyd, on the said 29th day of July, 1905, while in the employ of the defendant as a day laborer, was engaged with others in operating and running a hand car on the defendant's said railroad [The following was stricken out by the court: "and that it was followed by another hand car at a short distance."], and that said hand car was under the superintendence and control of said L. Mead, and that at the time said Mead was in the employ of the defendant as foreman of the gang or body of men of which the said Charles J. Boyd was a member, with authority over the said Charles J. Boyd and the others in running said hand car, as the agent of the defendant, and that it was the duty of the said Mead to see that said hand car was not run upon said railroad track so as to come into collision with any train running on said railroad, then it was the duty of said Mead to so inform himself as to the management of trains on said railroad that said hand car should not come into collision with any train, if by the use of ordinary care and diligence such collision could be prevented. And if the jury believe from the evidence that said Mead, being in charge of said hand car, if you find he was in charge and control of said hand car, and being in authority over the said Charles J. Boyd, if you find he was in such authority, did carelessly, negligently, recklessly or unskillfully direct the movements of said hand car upon said railroad, so that the same were run into by an engine and train of cars on said railroad, and by reason thereof the said

Charles J. Boyd was then and there killed by said engine and train of cars, without fault or negligence on his part, then the finding must be for the plaintiff.''

The plaintiff asked, and the court modified and gave, the following instruction numbered 2:

''The court instructs the jury that if you find for the plaintiff, you may give her by your verdict a sum not less than two thousand dollars, nor more than ten thousand dollars, in the discretion of the jury, taking into consideration all the facts and circumstances detailed in evidence [The following was added by the court:] in mitigation or aggravation of the negligent acts of the defendant found by you.''

The defendant asked, and the court gave, after modifying the same, instruction numbered 3, which is as follows:

''If the jury believe from the evidence, that deceased was killed merely as the result of an accident, then your verdict must be for defendant. [The following was added by the court:] If you believe from the evidence that such accident was not the result of the negligence of defendant as set forth in other instructions.''

The defendant asked, and the court gave, instructions 1 and 2 as follows:

''1. Under the pleadings and evidence in this cause, the court withdraws from the consideration of the jury the charge of alleged negligence of defendant's servants in running the two hand cars mentioned in evidence too close to each other, at the time and place of accident.''

''2. If the jury believe from the evidence, that deceased, in alighting from the hand car, failed to exercise such care and caution as an ordinarily prudent person would have exercised under the circumstances, and by reason thereof directly contributed to his own death, then the plaintiff is not entitled to recover, regardless of all other facts in the case.''

During the argument of Mr. Taylor for plaintiff, the following occurred:

"Now, gentlemen of the jury, as I said before, the fact of how much he made or what he did is not in this case, but since Mr. Railey in his opening statement told you that he only worked five months in the year, since he attempted to go into a calculation and show you he is only worth so much a year, and if he lived for forty years he would only be worth so much financially to his wife, I want to say to you the issue in this case is this: the wrongdoing of this railroad company. That instruction means, and that law means—"

"Mr. Railey: We except to him stating that to be the law to the jury—

"Mr. Railey: I understand he was telling the jury that they could return a verdict for exemplary damages.

"Mr. Taylor: No, sir. I was attempting to tell them how they should return this verdict. I say, it don't make any difference, don't make any difference how much he made, or anything he did, whether you can figure it up by calculation, but you take into consideration the act of negligence in this case. Don't make any difference what a man makes. A man might make ten thousand dollars; he might not make twenty-five cents, yet under the evidence in this case and similar cases, you could give him ten thousand dollars. You take into consideration, not what he was making, not what he was worth financially to his wife, but you take into consideration the wrongful act of the agent, the wrong of this company in running the cars and taking Charlie Boyd into that place of danger, and it caused his death.

"To which defendant at the time objected, which objection was overruled and exceptions duly saved at the time."

I. Was the hand car a "car" within the meaning of the section under which this suit is brought?

It is true that in Higgins v. St. Louis & Suburban Ry. Co., 197 Mo. 1. c. 312, Judge GRAVES said: "To our mind the purpose of this statute was to allow damages for the negligent acts of the servants managing, running and controlling public conveyances." But that was said in the course of his reasoning on the question as to whether that section applied to street railways. He did not have before him the question as to whether it included any kind of car that was not a public conveyance. But he also used this language with reference to that section:

"The statute says, 'whilst running, conducting or managing any locomotive, car or trains of cars.' Notice the punctuation and connectives; analyze the sentence, supplying the omitted words and we have, (1) Whilst running, conducting or managing any locomotive; (2) Whilst running, conducting or managing any car; (3) Whilst running, conducting or managing any train of cars. The motive power used in the locomotive is not limited to steam, nor is the method of running the car, or train of cars, limited to any particular means or motive power. It was no doubt couched in these general terms, when originally enacted, in view of our American progressiveness."

Now we know of no case in which a locomotive, by itself, is held to be a public conveyance, and yet, by the terms of the statute as thus analyzed by Judge GRAVES, a death occurring by negligence in running a locomotive, without its being attached to a car or train of cars, would be within that law. If so, why is not a hand car within it? No one will contend that a different policy should prevail with reference to a death caused by the negligent running of a hand car from that which prevails in case of death by negligence in running a locomotive not attached to cars or trains. Both are used in the business of the road; the locomotive in going from place to place about its business, the hand car in taking laborers from place to place

about their business. Including the locomotive shows that was intended to apply to more than public conveyances, and there is no reason why the word "car" does not apply to a hand car.

The case of Railroad v. Artery, 137 U. S. 507, was brought under the following statute of Iowa: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employees of the corporation, and in consequence of the willful wrongs, whether of commission or omission, of such agents, engineers, or other employees, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding."

The Supreme Court of the United States in that case, after reviewing the Iowa causes under that law, held that an injury to a section man while riding on a hand car was within that statute.

The case of Perez v. Railroad, 28 Tex. Civ. App. 255, was brought under a statute of that State as follows: "Every person, receiver or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this State, shall be liable for all damages sustained by any servant or employee thereof while engaged in the work of operating the cars, locomotives, or trains of such person, receiver or corporation, and the fact that such servants or employees were fellow-servants with each other shall not impair or destroy such liability." The court says (l. c. 257): "If the section men were working the handles of the hand car in such manner as to apply the power to the hand car for the purpose of moving it, they were 'engaged in the work of operating it.' The operation of the hand car was not the

chief labor for which they were employed, but it was connected with their work, and in performing their work of repairing the track, hand cars were used, and were very necessary, to enable them to reach the field of their work. In using the hand car the labor of the section men was utilized, and it became a part of the labor for which they were employed to propel the hand car to and from the place of their labor. The statute does not provide that its provisions shall apply to those only whose chief business it is to operate cars, nor that they shall apply to those employees only who operate cars for the carriage of freight or passengers, but it applies to all who may be engaged in the work of operating cars.''

The case of Benson v. Railroad, 75 Minn. 163, was brought under the statute of Wisconsin making railroad companies liable for negligent injuries to their employees ''while any such employee is so engaged in operating, running, riding upon or switching passenger or freight or other trains, engines or cars.'' The court said: ''There is nothing in the statute requiring that the car be connected with a locomotive, or with other cars forming a train, or that it be made to be propelled by any particular kind of power, in order to bring a case within its operation. We do not think that the fact that the word 'cars' is enumerated with 'trains' and 'engines' restricts its meaning to cars propelled by engines, or to cars usually operated as part of a train;'' and that court held that a hand car was a ''car'' within that statute.

In the case of K. C. M. & B. R. R. Co. v. Crocker, 95 Ala. 402, it was held that a lever car, or car propelled by hand, such as are in general use on railroads by the workmen engaged in repairing and keeping up the track, is within the spirit and terms of the statute which gives an action for injuries suffered by an employee by reason of the negligence of any person in

the service who has charge of "any signal points, loco-
motive, engine, switch, car or train upon a railway."

II. We are of the opinion that the petition states
a cause of action. It is broad enough to cover the
claim of plaintiff that the failure of the foreman of
the special gang to stop the hand car and listen, and,
if necessary, send a man ahead, was negligence. And
the risk arising from such failure was not assumed
by the deceased. The cases for death or injuries to
section men while working beside the track do not ap-
ply. In those cases each man must look out for him-
self. But where section men are in transit on a hand
car, it is not a case of individual volition and respon-
sibility. Individuality is swallowed in the control and
responsibility of the foreman who controls the move-
ment of the hand car, and who is the *alter ego* of the
company.

The case of Russ v. Railroad, 112 Mo. l. c. 51, was
for injuries to plaintiff, a section hand, while riding
on a hand car, caused by the act of the foreman in plac-
ing a water keg on the front end of the hand car, in
such a position that it was liable to roll off and did roll
off in front by reason of the jostling of the car, and de-
railed the car, causing the plaintiff's injuries. It was
held that the section foreman was a vice-principal, and
that for his negligence the defendant was liable.

In Miller v. Railroad, 109 Mo. l. c. 357, the court
said: "So, if the foreman had the control of the sec-
tion gang, and the power to direct the men what to do,
and when to do it, he was also a vice-principal." And
to the same effect is Stephens v. Railroad, 86 Mo. 221.

We do not agree with the contention of appellant
that Boyd was in no greater danger on the car than
he would have been standing on the ground between
the rails. The train and hand car were meeting at
full speed. It became the duty of the section men to
stop the car, alight, and remove it from the track, if

it could be done with safety to themselves. Only about three or four seconds were available for that purpose. From what transpired, it is probable that the track would have been safely cleared if Boyd had not fallen or been thrown down by some accident either in getting off the car or in getting the car off the track.

This is not like the case of Helm v. Railroad, 185 Mo. l. c. 225, where the victim got tangled up with some tools lying near the track but out of danger, and as the engine got near him he "pitched over sideways" and fell against the pilot. The court said: "He was not on the track or so close to it as to be struck by the passing train. If he could not move, all that he would have to do was to be still until the train passed him and he could then have extricated himself at his leisure. A person of the slightest prudence would have done that."

III. We are not able to see that there is any evidence in the case showing contributory negligence. Appellant, in its brief, concedes that Boyd had stepped off the hand car, was undertaking to take hold of the hand car, and fell while the train was a hundred feet away. With the train coming at thirty miles an hour, the interval between his fall and death was about two seconds. No one can say that his failure to get off the track was the result of negligence.

IV. Should the trial court have excluded plaintiff's children from the court room during the trial, as requested by the defendant? It would be hard to say that it is the duty of the trial court to exclude any one from the court room who is not disturbing the court by unseemly conduct. Article 2, section 10, of our Constitution requires that "the courts of justice shall be open to every person;" and section 3862, Revised Statutes 1909, provides: "The sitting of every court shall be public and every person may freely attend the same."

236 Sup.—6

The plaintiff did not offer any evidence as to the number of her children or their ages. The children themselves were not formally offered in evidence. Four of them were on the front seat outside the bar in view of the jury. The youngest, a suckling, was in its mother's arms when she appeared on the witness stand. In order that this case may be decided on its merits, let it be conceded that the plaintiff could have appeared in court in attendance on the trial without her children. Undoubtedly she could have done so. It follows that profert was informally made of the children for the purpose of influencing the jury. If the court had excluded them at the request of the defendant, it would not have in any wise diminished the effect of the incident on the jury, and may have increased it. It is probable that the act of defendant in calling attention to the children and asking that they be excluded increased the effect of their presence.

As this case will have to be retried for reasons hereinafter stated, we will now consider whether it is competent for the plaintiff under the law as it now is, to prove the number and ages of her minor children. The first one of the "death statutes" of which we can find any trace was the law of Massachusetts in 1840, providing a fine not exceeding $5000 to be recovered by indictment for the benefit of the widow and heirs of any passenger whose life should be lost by the negligence of the proprietors of any railroad, etc.

The English statute (9 & 10 Vict. c. 93, secs. 1 and 2) known as Lord Campbell's Act, enacted in 1846, provided that in cases of death by negligence as therein provided, the executor or administrator of the deceased might recover for the benefit of the wife, husband, parent and child of the deceased such damages as the jury might think proportioned to the injury resulting from such death to the parties respectively for whose use such action shall be brought.

In 1848 the case of Carey v. Railroad, 1 Cush. 475, was decided by the Supreme Court of Massachusetts, in which the court, speaking of the statutes of that State and to Lord Campbell's Act says:

"These statutes are framed on different principles, and for different ends. The English statute gives damages, as such, and proportioned to the injury, to the husband or wife, parents and children, of any person whose death is caused by the wrongful act, neglect or default of another person; adopting, to this extent, the principle on which it has been attempted to support the present actions. Our statute is confined to the death of passengers carried by certain enumerated modes of conveyance. A limited penalty is imposed, as a punishment of carelessness in common carriers. And as this penalty is to be recovered by indictment, it is doubtless to be greater or smaller, within the prescribed maximum and minimum, according to the degree of blame which attaches to the defendants, and not according to the loss sustained by the widow and heirs of the deceased. The penalty, when thus recovered, is conferred on the widow and heirs, not as damages for their loss, but as a gratuity from the commonwealth."

It will thus be seen that Massachusetts and England approached this great field of legislation from opposite sides. One providing a remedy strictly penal, and the other, one purely remedial. As other states approached the subject, they began to view it from an intermediate standpoint.

The remedio-penal statute of Missouri, enacted in the revision of 1855, withstood all assaults for half a century and finally went down by the Amendment of 1905, done to its death by the joint act of all concerned; and in the place of the $5000, it was provided that the recovery should be "the sum of not less than two thousand dollars and not exceeding ten thousand dollars, in the discretion of the jury."

From the first the statute of 1855 has been regarded by this court as both remedial or compensatory and penal. The first case under that law to reach this court was Coover v. Moore, 31 Mo. 574, decided in 1862. In that case it was said: "From the fact that under this act only certain persons, presumed to be interested in the life of the deceased, may institute an action under it, and that there are large classes of persons whose lives are in no manner protected by the provisions of the act, it appears that the sum which may be recovered is not intended as a penalty, but as compensatory damages liquidated by the statute."

In the Schultz case, 36 Mo. l. c. 23, the court said: "The natural and inevitable result and consequence of the adoption and use of these more dangerous means of carrying on the ordinary business of life have led communities in many States to conceive that there ought to be some greater security for life and property in these cases, and some more adequate compensation and redress for injuries suffered in this way, than has been heretofore attainable by the ancient principles of the common law alone; and at the same time, in many of those instances in which the common law has afforded an ample remedy, it has been felt that there was need that the sympathies and extravagances of inconsiderate juries, not unfrequently resulting in unreasonable and inordinate damages, should be controlled by some limitation and restraint." [Schultz v. Railroad, 36 Mo. 1.]

In Philpott v. Railroad, 85 Mo. l. c. 168, it was said:

"The case at bar demonstrates the fact that it cannot be wholly compensatory, for the amount of the recovery, being fixed, as it is, is altogether out of proportion to the value of the services of the son for the remainder of the period of his minority. The law is also designed to guard and protect persons and the traveling public against the wrongful acts thereby pro—

hibited. Whether the amount awarded is denominated damages, compensatory damages, liquidated, as was said in Coover v. Moore, 31 Mo. 574, or a penalty, is not material. The law, as well as being compensatory, is of a penal and police nature, and can, without objections, subserve both purposes at one and the same time." In the King case, 98 Mo. l. c. 239, the court said:

"That amount is allowed in the cases therein specified for a twofold purpose, first, compensation, and second, as a penalty to protect the public against repetitions of like wrongs." [King v. Railroad, 98 Mo. 235.]

In the Gilkeson case, 222 Mo. l. c. 203, Judge WOODSON said: "So, instead of these sections being susceptible of the construction suggested by counsel for respondent, namely, to afford compensation for the damages done to the property rights of the minor children, their purpose was just the opposite—primarily, to secure the personal safety of the passenger; and, secondarily, to compensate those who should be damaged by being deprived of their marital and parental relations, by the wrongful act of the carrier, in the order stated in said sections." [Gilkeson v. Railroad, 222 Mo. 173.]

In Hennessy v. Brewing Co., 145 Mo. l. c. 112, it was said: "and it is proper here to say that the damages here allowed are both compensatory and penal."

It is true that the Schultz case has been overruled on the fellow-servant question, in Proctor v. Railroad, 64 Mo. 112, but in the latter case the court on page 122 speaks of the $5000 as "damages liquidated by the terms of the act" and says "the only difference between sections 2 and 3 being that when the death is occasioned by any of the means specified in section 2, the representatives to whom the right of action is transmitted shall recover $5000, no more and no less; whereas, under sections 3 and 4, the representative to

whom the right of action is transmitted may recover from one cent to $5000.''

We do not think that the words ''as a penalty'' inserted by the Amendment of 1905 changed the spirit of the statute. They were evidently used out of caution in order to preserve the constitutionality of the statute, while the discretion allowed the jury as to the amount of damages was an extension of the remedial features of the law.

Since writing the above, our attention has been called to the language of Judge VALLIANT in Young v. Railroad, 227 Mo. 1. c. 317, as follows: ''The words 'as a penalty' inserted by the amendment add nothing to the meaning or effect of the section; we have always held it a penal statute, but the placing of a minimum and maximum limit to the amount of the penalty, introduces an entirely new feature and it is of that that appellant complains;'' and on page 333: ''In the case at bar, however, the damages are not given as compensation to the party aggrieved, but as a penalty which the law prescribes for the negligent killing of a human being; it is all penal in its character and in fixing the penalty the jury have a right to consider the conduct of the negligent party beyond the mere finding that he was negligent; they may consider whether the conduct which resulted in the catastrophe arose from mere inattention, or was willful, wanton or reckless.''

But it will be noticed, on a careful reading of that case that the main question was whether the statute as amended was constitutional, and its constitutionality was upheld on the ground that it was a penal statute. The question as to whether the amended statute has a remedial quality was not raised by any issue in the case. The statement that the words ''as a penalty'' made no change in the law left the remedial feature in full force. That case was decided March 31, 1910. On May 13, 1910, the case of Murphy v.

Railroad, 228 Mo. 56, was decided, Judge VALLIANT concurring. In that case Judge LAMM said, l. c. 86: ''In one permissible view of the new statute (and the one most obvious) it is penal and nothing else. The law-makers said so. But when the whole statute is read and harmonized it might appear (by construction) that the minimum amount is left alone as nakedly and baldly penal, and that the discretion of the jury to go above that amount might be gauged on the theory of compensation, as pecuniary loss, or, if not that, as having regard to the aggravating or mitigating circumstances of the individual case. 'The law,' says Dr. Johnson, 'is the result of human wisdom acting on human experience for the benefit of the public.' This is a lay view of it. Technically, and at end, the law is what it is judicially construed to mean. In that view, the construction of a statute becomes part of it. Accordingly, we count it wise to reserve the question as to whether the statute involves only a penal, or both a penal idea and one of compensation, or of aggravation or mitigation, since those large and vital questions are not briefed by learned counsel and should not be passed on finally without the illuminating aid of full briefs.''

We take that language as a plain assertion that the case of Young, supra, is not to be construed as holding that the new statute has no remedial power. It was certainly intended that the jury should distinguish between a man of little or no earning capacity and one whose strong arm is equal to the demands upon it. If the victim left no wife, husband or child, the jury within the limits of that discretion, ought to be permitted to consider the fact that the amount recovered will go to collateral kindred of the deceased who had no claim upon his bounty or support. On the other hand they may make a difference in the amount allowed, by reason of the fact that the deceased left a wife and minor children.

It is hard for an engineer to go to his death at his post of duty knowing that his life will be valued in the courts at exactly the same as that of the wandering "hobo" whose death is, by the humanitarian doctrine, made not only a relief but a profit to his relatives. It was the injustice of the old law in that respect that brought about the amendment. The new law should not be so construed as to make it fail of its purpose. If any other construction is placed upon it, the courts will be at sea without rudder or compass.

Of course, under the arbitrary $5000 law there was no place for either instructions as to the measure of damages or evidence on that subject; and, so far as we have discovered, there is no decision under that statute on those points. The case of Williams v. Railroad, 123 Mo. 584; Mahaney v. Railroad, 108 Mo. 191; Dayharsh v. Railroad, 103 Mo. 570; Stephens v. Railroad, 96 Mo. 207, cited by appellant, holding that evidence as to plaintiff's children is incompetent, are not cases under that section, but are cases brought by the injured party himself, and of course a different rule would apply.

It has always been held by this court that in actions brought under sections 2865 and 2866, Revised Statutes 1889, being sections 5426 and 5427, Revised Statutes 1909, the plaintiff could testify as to the number and ages of her minor children. In the Tetherow case, 98 Mo. l. c. 84, the court said: "There was no error in permitting the plaintiff to state the number and ages of her minor children. The father during his life (in the absence of any showing qualifying that liability) was bound to maintain the children. On his death and during her widowhood, at least, this liability was cast upon the mother according to the present law of Missouri, whatever may have been the rule at the common law, regarding which great differences of opinion have been expressed." [Tetherow v. Railroad, 98 Mo. 74.] And that rule was followed in Soeder v.

Railroad, 100 Mo. 673; O'Mellia v. Railroad, 115 Mo. 205; Haehl v. Railroad, 119 Mo. 325; Fisher v. Central Lead Co., 156 Mo. 492.

The case of Schlereth v. Railroad, 115 Mo. 87, was tried by the plaintiff on the theory that it was under those sections of the damage act where the recovery may be any amount not exceeding $5000, and the court said, l. c. 102: "On the trial plaintiff was allowed to testify as to the number of children her husband left surviving him, and as to the condition of her own health. There was no error in this, the suit being by the widow on account of the death of her husband. [Tetherow v. Railroad, 98 Mo. 84.] In view of the holding in this case, however, that deceased and the negligent engineer were not fellow-servants within the rule which would exempt the master from liability for the death, the damages or the penalty under the statute being fixed at $5000, the evidence was wholly immaterial."

The defendant tried this case on the theory that it was competent to show the pecuniary loss of plaintiff by the death of her husband. In instruction C asked by defendant and refused by the court, the defendant requested among other matters that the jury be instructed as follows: "If therefore the jury should find for the plaintiff, in estimating her damages, you can only allow her for the actual pecuniary loss which she has sustained by reason of the death of her husband," etc.

The defendant is not bound by that theory of the law, for its instruction was refused. It was said in McGowan v. Ore & Steel Co., 109 Mo. l. c. 535, that a party is bound by the law of an instruction asked by him when that instruction is given, but not when it is refused. But the fact that defendant in this case asked such an instruction shows that it then occupied the same position which we now say is correct.

Now under the Tetherow case, supra, and the case following it, this court held that it was competent to show the number and ages of plaintiff's minor children as bearing on her pecuniary loss, under the section providing for a recovery not exceeding $5000. If such evidence is competent on the question of the pecuniary loss in an action where the recovery did not exceed $5000, it surely is competent on that same question in this case. The defendant was right in conceding that the pecuniary loss of plaintiff was an element to be considered by the jury, but was wrong in insisting that it was the only one. It was right in claiming that the jury should not consider the pain and suffering of the deceased, or the mental pain, anguish or loss of society sustained on account of his death; but undoubtedly the Legislature intended that the jury might take into consideration the facts as to plaintiff's pecuniary loss, and the circumstances of the defendant's negligence.

We are therefore of the opinion that it is proper to show in evidence the number and ages of plaintiff's children and that it is not error to permit them to remain in the court room during the trial.

V. The fourth clause of instruction D asked by defendant and refused by the court is not the law for the following reasons:

First. The use of the words "without any reference to any other member of the family" leaves it out of the power of the jury to consider the additional pecuniary loss cast upon the plaintiff by reason of her being compelled, by her husband's death, to assume the burden of the children's support. That is one of the things which we have held it is the right of the jury to consider. They are not to consider the pecuniary loss sustained by the children, but should consider the pecuniary loss falling on her, on account of the children.

Second. It is not true that the jury should consider only his actual earning capacity and determine what portion of his earnings would be expended for her sole benefit.

In Parsons v. Railroad, 94 Mo. l. c. 299, Judge BRACE said: "Nor does it belong to that class of cases in which the damages, in the nature of things, must be largely conjectural, and for that reason not susceptible of approximated measurement, as, for instance, when the husband is suing for the death of his wife, or the wife for the death of the husband, and the value of the daily ministrations of a whole life is to be estimated."

It was said in Barth v. Railroad, 142 Mo. l. c. 559: "The word 'necessary injury' in our statute is broad enough to include any damages which may be estimated according to a pecuniary standard, whether present, prospective or proximate. While it may not be feasible for trial courts to define with exactness the rule of damages applicable to the loss of a husband or wife, to the jury, without a knowledge of the character, habits of deceased, station in life, business, etc., much is necessarily left in arriving at a just conclusion."

In Schaub v. Railroad, 106 Mo. l. c. 93, it is said: "The pecuniary value of the husband's life, taking into consideration his age, health, probable length of life, his capacity to earn wages, should be considered; in other words, it is the pecuniary interest alone which the wife has in her husband's life, that she may recover, and it is peculiarly the province of the court to give the jury the measure of damages, and their province to fix the amount under the guidance of the court."

In Fugler v. Bothe, 117 Mo. l. c. 491, an instruction was approved as follows: "The jury are further instructed that, if they find a verdict for the plaintiff herein, they will assess her damages at such sum as they may believe from the evidence she sustained from

the death of her husband; not exceeding the sum of $5000, and in estimating the same they will take into consideration what they may believe from the evidence would have been the value of her support from him from the time of his death, during the time he would probably have lived and supported her."

There is a broad difference between the above instruction and the one asked by the defendant in this case. The one approved by this court is broad enough to include "the daily ministrations of a whole life," but the one asked by defendant would confine the recovery to such portions of his earnings as "would, to a reasonable degree of certainty, have been expended by her said husband out of said earnings, for her sole benefit," etc.

VI. Objection is made to instruction number 1 given for the plaintiff. We are not prepared to hold that it is fatally erroneous, but it is too involved and uncertain. After the statement as to the admitted facts, the instruction should tell the jury that if they find that going around that curve in a heavy fog without stopping to listen or sending a man forward to ascertain whether a train was coming, was such an act as a person of ordinary care and prudence as such foreman would not have done, they should find for the plaintiff, otherwise, for the defendant.

VII. After considering the history of the legislation on the subject under discussion, and the views heretofore expressed by this court on that legislation, and comparing the several sections of the statute, we are of the opinion that in this case, brought as it is under section 5425, Revised Statutes 1909, the jury should be told that if they find for the plaintiff they should allow her a sum not less than $2000 and not more than $10,000, in the discretion of the jury, and that in determining the amount they will allow, they

may take into consideration the pecuniary loss occasioned to the plaintiff by the death of her husband and also may take into consideration the facts constituting negligence on the part of defendant causing the death; and that in considering the subject of her pecuniary loss they may consider what would have been the value of her support from him from the time of his death during the time he would probably have lived and supported her, and may also consider the additional burden, if any, cast upon her for the support of her minor children by reason of his death.

In other words, the section under which the suit is brought does not call for any measure of damages. It provides for a minimum and a maximum and the exercise of a discretion by the jury between the two extremes. That discretion was certainly not intended for the exercise of mere whim, caprice or prejudice. As the statute has a remedial side to it, the jury may consider the extent of the injury to be remedial; and as it has a penal side, the jury have the right to consider the facts of the negligence in determining the amount to be allowed under that phase of the case.

VIII. Instruction numbered 2 given on behalf of plaintiff is clearly erroneous. We have held in effect that under the law it was for the jury to say whether the act of the foreman on a very foggy day in going on a curve round the base of a hill on a hand car, without precautions to see whether a train was coming, was negligence. But we hold that there is no evidence of any aggravating circumstances connected with this case. It is error to instruct the jury to take into consideration aggravating circumstances except in cases where punitive or exemplary damages are allowed on account of willfulness, malice, wantonness, recklessness or conscious negligence or wrong intent. [Parsons v. Railroad, 94 Mo. l. c. 299; Morgan v. Durfee, 69 Mo. l. c. 478; Barth v. Railroad, 142 Mo. l. c. 558.]

Additional force is given this proposition by section 1796, Revised Statutes 1909, which provides: "In all actions where exemplary or punitive damage are recoverable, the petition shall state separately the amount of such damages sought to be recovered." And the next section provides that the amount of such damages shall be separately stated in the verdict. For this error the cause is reversed and remanded.

*Bond, C.,* concurs.

PER CURIAM.—The foregoing report of Roy, C., is hereby adopted as the opinion of the court.