## EDWIN R. NIEHAUS Administrator, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, June 4, 1912.

1. **STREET RAILWAYS: Crossing Collision: Negligent Speed: Proximate Cause: Question for Jury.** In an action against a street railway company for the death of an occupant of a buggy, resulting from a collision between the buggy and a street car, it was shown that the horse approached the track at an ordinary trot, that the car was traveling at the rate of twenty-five miles per hour and struck between the rear of the horse and the front of the buggy, and that that speed had been maintained for at least one hundred, five feet. *Held*, that inasmuch as it would have taken at least two seconds more for the car to have run that distance, had it been traveling at fifteen miles per hour (the maximum rate permitted by ordinance), the jury might well have found that during that extra time the horse and buggy could have passed off of the track; and hence the question of whether the violation of the ordinance was the proximate cause of the collision was for the jury.

2. ———: **Railroads: Evidence: Speed of Cars.** The rate of speed of moving cars may be shown by the opinon of one who saw them in motion and who possesses a knowledge of time and distance.

3. ———: **Crossing Collision: Evidence: Speed of Car.** In an action against a street railway company for the death of an occupant of a buggy, resulting from a collision between the buggy and a street car, where the petition alleged that the car was negligently run at a high rate of speed and at a speed in excess of the maximum rate prescribed by ordinance, testimony by a witness who had observed and ridden on the cars on that particular line, that the car in question "traveled faster than they ordinarily do," was relevant, since the fact that the speed was different from that ordinarily maintained was a circumstance to be considered in determining whether or not it was a negligent one.

4. ———: ———: ———: **Common Law Negligence: Gravamen of Charge.** In an action against a street railway company for the death of an occupant of buggy, resulting from a collision between the buggy and a street car, an allegation in the petition that the/motorman ran the car "at a high and dangerous rate of speed, to-wit: at a speed of more than fifteen miles

per hour," was a charge of common law negligence, the gravamen of which was, that the car was being run at too high a rate of speed; and hence it was sufficient to prove that the car was run at too high a rate of speed, regardless of whether or not it was in excess of fifteen miles per hour.

5. **DEATH BY WRONGFUL ACT: Damages: Instructions.** In an action against a street railway company for the death of an occupant of a buggy which was struck by a street car, brought by the administrator of decedent, under section 5425, Revised Statutes 1909, an instruction on the measure of damages, that if the jury found for plaintiff, they should find a verdict in such sum, not less than two thousand nor more than ten thousand dollars, as in their discretion should be awarded to him and inflicted upon defendant as a penalty for the unlawful act complained of, clearly contemplated the infliction of a penalty, as distinguished from an award of compensatory damages.

6. ———: ———: **Action Under Section 5425: Compensatory Damages.** Under the decision in Boyd v. Railroad, 236 Mo. 54, the question of pecuniary loss, in an action for death by wrongful act, under section 5425, Revised Statutes 1909, may be submitted to the jury, to be considered by them, in determining the amount of their verdict, along with the facts bearing on the penal phase of the case; but, in the absence of a showing of pecuniary loss, a recovery may be had on the penal phase of the case alone.

7. ———: ———: ———: **Instructions: Assuming Negligence: Characterizing it as Unlawful.** In an action against a street railway company for the death of an occupant of a buggy which was struck by a street car, brought by the administrator of decedent, under section 5425, Revised Statutes 1909, in instruction on the measure of damages, that if the jury found for plaintiff, they should find a verdict in such sum, not less than two thousand nor more than ten thousand dollars, as in their discretion should be awarded to him and inflicted upon defendant as a penalty for the unlawful act complained of, did not assume that defendant was guilty of a negligent act causing the death of decedent, but merely described such act as "unlawful," if committed under the circumstances hypothesized in the other instructions, and to so characterize it was not incorrect.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. E. Francis* for appellant.

(1) The court erred in refusing to direct a verdict, for the reason there was no showing that the collision would not have occurred had the car been running at fifteen miles per hour, and therefore, no causal connection was established between the alleged operation of the car at a negligent rate of speed and the injury to decedent. Schmidt v. Transit Co., 140 Mo. App. 182; Bluedorn v. Railroad, 121 Mo. 258; Brick Co. v. Railroad, 17 Mo. App. 624; Molyneux v. Railroad, 81 Mo. App. 25. (2) The court erred in giving plaintiff's instructions Nos. 1 and 3, for the reason there was no showing that the negligent acts therein hypothesized were the proximate cause of the injury to decedent. Authorities cited under point 1. (3) The court erred in refusing to strike out, on defendant's motion, a statement made by a witness that the car was going "much faster than fifteen or twenty miles an hour," for the reason said statement was a mere conclusion; and, for the same reason, erred in admitting, over defendant's objection, evidence that the "car was going faster than ordinary." Hawk v. Railroad, 130 Mo. App. 658; Masterson v. Transit Co., 204 Mo. 507; Ray v. Railroad, 147 Mo. App. 344. (4) Plaintiff's instruction No. 1 is erroneous, for the reason it permitted the jury to find for plaintiff if they believed the car was operated at a negligent rate of speed, without requiring them to find such speed was in excess of fifteen miles per hour, when the allegation in the petition was, that the car was operated at a negligent rate of speed, to-wit: at a speed in excess of fifteen miles per hour. This broadening of the issues is reversible error. Wolfe v. Supreme Lodge, 160 Mo. 675; Price v. Railroad, 72 Mo. 419; Beave v. Transit Co., 212 Mo. 331. (5) Instruction No. 12, defining the measure of damages, is erroneous: (a) Because it permitted an award of compensatory dam-

ages, which is not allowable in an action under the second section of the Damage Act. Moyes v. Railroad, 138 S. W. 937. (b) Because it permitted an award of compensatory damages without any foundation having been laid by the evidence. (c) Because it assumes that defendant's alleged negligent acts were unlawful, and because it singles out and comments on such alleged negligence by characterizing it as unlawful.

*Johnson, Houts, Marlatt & Hawes* and *Fagin & Kane* for respondent.

(1) The trial court properly submitted to the jury the question whether the excessive speed of the car, and the violation of the ordinance limit of speed caused the collision. Connor v. Railroad, 149 Mo. App. 675; Stotler v. Railroad, 200 Mo. 135; Strauchon v. Railroad, 232 Mo. 596; Powers v. Transit Co., 202 Mo. 267; Schmidt v. Transit Co., 140 Mo. App. 182. (2) The court committed no error in permitting Gohausen to testify that the car was run "faster than ordinary" and in allowing Kletzker to testify that the car was going "much faster" than fifteen or twenty miles per hour. Railroad v. Ashline, 171 Ill. 313; Ehrmann v. Railroad, 23 App. Div. (N. Y.) 22; 17 Cyc., pp. 105, 106, 107; Guggenheim v. Railroad, 66 Mich. 154; 6 Thompson on Negligence, par. 7754; Railroad v. Green, 78 Ark. 129; Johnson v. Railroad, 127 Cal. 608; Beier v. Transit Co., 197 Mo. 230. (3) Instruction No. 1, given for plaintiff, does not broaden the issues made by the pleadings. (4) The instruction on the measure of damages limits recovery to damages by way of penalty. Murphy v. Railroad, 228 Mo. 87.

STATEMENT.—Plaintiff brought this suit under the second section of the Damage Act (section 5425 of

the Revised Statutes of Missouri 1909) to recover $10,000, damages for the negligent killing of his intestate, Annette E. Niehaus. The plaintiff had verdict and judgment against the defendant for $5,000, and the defendant has appealed.

Miss Niehaus was killed in a collision between one of the defendant's street cars and a runabout in which she was riding, the collision occurring on Sunday afternoon, July 11, 1909, at the intersection of Shenandoah avenue and Lawrence street in the city of St. Louis. Plaintiff charges that her death was caused by the negligence of defendant's motorman in charge of the street car as follows: (1) "In running said car at said time and place at a high and dangerous rate of speed, to-wit, at a speed of more than fifteen miles per hour." (2) "In running said car at said time and place at a greater rate of speed than fifteen miles per hour," contrary to ordinance, pleading such ordinance. There were two other specifications of negligence but they need not be noticed as they were not submitted to the jury. The defendant offered no evidence. The evidence on behalf of the plaintiff discloses that Shenandoah avenue and Lawrence street are open public streets in the city of St. Louis, the former running east and west and the latter north and south. Defendant operated a double track street railroad line on Shenandoah avenue, crossing Lawrence street at right angles. Lawrence street leads to and from a large public park, is much traveled, especially on Sunday afternoons, by people visiting the park. On a Sunday afternoon, July 11, 1909, Miss Niehaus was riding south along Lawrence street in an ordinary runabout, pulled by a small horse, driven by her adult married sister, Mrs. Ruwe. She held a baby in her lap. The runabout with its occupants approached Shenandoah avenue, the horse going at a moderate trot. For a considerable distance, some three blocks, Shenandoah avenue inclined sharply

downward toward and past the point where it crossed Lawrence street. West-bound cars came down this incline. The driver in the runabout, Mrs. Ruwe, could not look eastwardly along and up this incline until she had reached about the front building line of a row of houses which fronted south on Shenandoah avenue. Then she looked and could see eastwardly past a hedge to a point in the west-bound track 160 feet east of the center line of Lawrence street along which the runabout was travelling. She saw nothing to indicate the approach of a car and drove on, remembering nothing more. As the horse and runabout with its occupants approached the track, a car belonging to the defendant came down the incline on the west-bound track at a "terrible" speed, which, in the opinion of one witness was at the rate of twenty-five miles per hour. When this witness first noticed the car and its speed, it was at the third or fourth house east of the corner house, a point which we calculate from measurements on a plat introduced in evidence is from 105 to 130 feet from the point of collision. From that point the car, according to this witness, ran to the point of collision without any perceptible slackening of speed. A man who sat on the sand box by the motorman testified that the car was "coasting," that is, running down the hill without brake or power. That he first noticed the runabout when the car was about seventy-five feet from the crossing and at that time the head of the horse was about ten feet from the track. The car ran about 125 feet beyond the point of collision before stopping. It had struck the horse and runabout about midway, that is, so as to strike about the hind part of the horse and the front part of the runabout, and had passed through, separating the horse from the runabout. When the car stopped the horse was lying dead on the south side of the car and about ten or fifteen feet back of it. The runabout was on the north side and near the front of the car;

with one of its wheels broken off. The baby was caught and held on the front window of the car. Miss Niehaus was lying under the air-tank on the north side of the car suffering from injuries from which she died. Mrs. Ruwe was also found on the ground, badly injured. It was shown that Miss Niehaus was an adult person and had neither husband nor child, natural born or adopted. No evidence was offered tending to show her earning capacity or expectancy of life.

As some point is made on the testimony of two of the witnesses who testified as to the speed of the car, we will mention such testimony more particularly. A. W. Gohausen testified that he was seventeen years of age and had lived in the city of St. Louis and been riding in street cars all his life; had ridden in the Shenandoah avenue cars up and down Shenandoah avenue. He observed the speed of this car from the sidewalk. On direct-examination he was permitted to state over the objection of the defendant, in substance, that the car was running faster than cars ordinarily ran down this particular incline past Lawrence street. On cross-examination he stated that cars ordinarily travelled fast down that hill on Shenandoah avenue and that this car travelled faster than they ordinarily did. The direct examination of George Kletzker, the man on the sand box, proceeded in part as follows: He first stated that for two months he had been a guide for the Auto Sight Seeing Company, and that the automobiles he had ridden on in such employment usually went at the rate of fifteen to twenty miles an hour. That he had lived in St. Louis all his life and had noticed the speed of street cars and had ridden on them as well as railroad trains. "Q. Do you know enough about the speed from riding on automobiles and street cars to give us some idea about how fast that car was going? A. Well, I would say it was going faster than they generally

run. Mr. Francis: I move that be stricken out. The Court: That is not responsive; that will be stricken out for the present. By Mr. Johnson: Compare it with your automobile when you were going fifteen to twenty miles an hour, how was this car going? A. It was going much faster. Defendant's counsel moves to strike out the answer as being a conclusion; objection overruled; defendant at the time duly excepts.'' The plaintiff also introduced the speed ordinance of the city of St. Louis which was pleaded. It prohibited cars being run at the point where this collision occurred at a speed greater than at the rate of fifteen miles per hour.

At the instance of the plaintiff, the court gave three instructions. The first instruction hypothesized the facts necessary to be found in order to plaintiff's recovery under the first charge of negligence, viz.: that the ''said collision and injuries to the said Annette E. Niehaus which caused her death were directly caused by the negligence of defendant's motorman in charge of said car in running said car at said time and place at a high and dangerous rate of speed, to-wit, at a speed of more than fifteen miles per hour.'' By this instruction the trial court did not require the jury to find that the car was being run at a rate of speed in excess of fifteen miles an hour, but permitted them to find for the plaintiff if they believed it was being negligently run at what was a dangerous rate of speed under the facts and circumstances. The second instruction dealt with the charge that the car was being run at a greater rate of speed than was allowed under the city ordinance, viz., fifteen miles per hour. The third instruction gave the usual definitions of ''ordinary care'' and ''negligence.''

The court gave eight instructions at the instance of the defendant. It is unnecessary to set them forth. Of its own motion the court gave instruction No. 12, as follows:

"The court further instructs the jury that if under the other instructions you find for the plaintiff, you will return a verdict in his favor in such sum, not less than two thousand dollars, and not exceeding ten thousand dollars, as in your discretion should be awarded to him and inflicted upon the defendant as a penalty for the unlawful act complained of, taking into consideration all of the facts and circumstances in evidence before you.

"If on the other hand, you decide under the evidence and the law as declared in the other instructions given you, to find for the defendant, your verdict need merely state that you find in favor of the defendant."

CAULFIELD, J. (after stating the facts).—I. The defendant first contends that the court erred in refusing to direct a verdict for the defendant, because "there was no showing that the collision would not have occurred had the car been running at fifteen miles per hour, and, therefore, no causal connection was established between the alleged operation of the car at a negligent rate of speed and the injury to decedent." We do not agree with defendant's premise and therefore cannot accept the conclusion based thereon. It appears from the evidence that the vehicle in which the plaintiff was riding was an ordinary runabout, pulled by a small horse. The horse approached the track and was crossing over it at an ordinary trot, when the car bore down upon it, running twenty-five miles an hour. The car apparently struck at a point near the rear of the horse and the front of the body of the runabout. It had maintained this high rate of speed for at least 105 feet. It would have taken it two seconds longer to run that 105 feet and reach the point of collision if it had been going only fifteen miles an hour. The jury may well have found that during that extra two seconds the horse and runabout, going at an ordinary trot, say six miles

an hour, could have passed off the track and escaped. Under these circumstances the question of causal connection was properly submitted to the jury. [See Stotler v. Railroad, 200 Mo. 107, 98 S. W. 509; Powers v. Transit Co., 202 Mo. 267, 100 S. W. 655; Schmidt v. Transit Co., 140 Mo. App. 182, 120 S. W. 96; Connor v. Wabash Railroad, 149 Mo. App. 675, 129 S. W. 777; Strauchon v. Met. Street Ry. Co., 232 Mo. 587, 596, 135 S. W. 14.]

II.  There was no error in the admission of the testimony of witness Gohausen "that the car was going faster than the ordinary." His other testimony disclosed that he meant that the car was going faster than they ordinarily travelled down the hill on Shenandoah avenue to the point where the collision occurred.  On cross-examination he testified in effect that the cars usually travelled fast down that hill but that "this car travelled faster than they ordinarily do." The rule is well settled in this state "that the rate of speed of moving cars may be shown by the opinion of a witness who saw the cars in motion," and that "one who sees a moving train and possesses a knowledge of time and distance is competent to express an opinion as to the rate of speed at which the train is moving." [Walsh v. Railroad, 102 Mo. 582, 586, 14 S. W. 873, 15 S. W. 757.]  This evidence then was not incompetent for the purpose of proving the speed of the car.  Was it relevant?  We think it was.  One of the allegations of negligence was that the car was run "at said time and place at a high and dangerous rate of speed;" another that the speed of the car was in excess of the maximum rate prescribed by ordinance.  One of the witnesses testified that the car was running at the rate of twenty-five miles an hour.  The evidence that the car was running faster than cars usually ran at that place had a tendency to prove that the speed was negligent, for the fact that the speed

was different than ordinary, different in such a way as to be more dangerous to travellers on the highway was a circumstance proper to be taken into consideration by the jury in determining whether the speed was negligent. Moreover, this testimony that though cars usually ran fast down this incline, this car was running still faster, had a tendency to corroborate the testimony of the witness who testified with exactness to a high rate of speed, just as testimony that it was going very slow would have had a tendency to refute it. The tendency might be slight, but it exists nevertheless. In Kansas City, etc. Ry. Co. v. Crocker, 95 Ala. 412, a witness was asked about how fast the car was going "compared to a man running," and the witness answered "Well, sir, it was running faster than a man could run." In holding this question and answer to be proper the Supreme Court of Alabama, made the following observations which we deem pertinent here: "That the witness is unable to state that the object in question was moving at the rate of a certain number of miles in an hour would not necessarily render his opinion useless as an aid to the jury. Assistance in coming to a conclusion on such a question may be derived from a statement that the object was going slowly, or at a snail's pace, or no faster than a man walks, or faster than a man could run. The opinions are admitted to enable the jury to realize, as far as possible, the impression as to speed made by the moving object upon the mind of one who saw it. It would be more satisfactory if the admissibility of such opinions could be made to depend upon their conformity to some definite standard of clearness or accuracy in their formation and expression. It is not practicable, however, to fix any such standard. The vagueness of the opinion would only go to the weight of the testimony, and not to its admissibility." To the same effect is I. C. R. R. Co. v. Ashline, 171 Ill. 313, where it was held proper to permit a witness

to testify that the train was running "fast." See, also, Guggenheim v. L. S. & M. S. Ry. Co., 66 Mich. 150, 155. So we are of the opinion here that while the testimony complained of was, perhaps, of little weight, still it was competent and relevant, and its weight was a matter for the trier of the facts, to be considered by them in connection with the other testimony as to speed. What we have said and quoted applies with at least equal force to the testimony of witness Kletzker, that the car was going much faster than an automobile going fifteen to twenty miles an hour.

III. Defendant contends that the first instruction given at the instance of the plaintiff was erroneous in that it broadened the issues made by the pleadings. In this respect defendant assumes that even under the first charge of negligence, the plaintiff must prove that the car was running more than fifteen miles an hour. This assumption and the conclusion based thereon are erroneous. The first charge is that the motorman was "running said car at said time and place at a high and dangerous rate of speed, to-wit, at a speed of more than fifteen miles per hour." It is clear from the reading of the entire petition that this was a charge of common law negligence, the gravamen of which was that the car was being run at too great a rate of speed under the circumstances, not that it was being run at a rate of speed in excess of fifteen miles an hour. It was sufficient to prove such gravamen and unnecessary to prove that the car was running more than fifteen miles an hour. By this instruction, or the part complained of, the trial court so informed the jury. In doing so it did not broaden the issues or commit any error.

IV. Defendant contends that "instruction No. 12, defining the measure of damages, is erroneous:

(a) "Because it permitted an award of compensatory damages.

(b) "Because it permitted an award of compensatory damages without any foundation having been laid by the evidence.

(c) "Because it assumes that defendant's alleged negligent acts were unlawful, and because it singles out and comments on such alleged negligence by characterizing it as unlawful."

The first two points made against the instruction are without merit as the instruction clearly contemplates the infliction of a penalty as distinguished from award of compensatory damages. We may say, however, though it is not germane to any point involved, that if there had been anything in the case to justify it, then, under the last decision of our Supreme Court in Boyd v. Mo. Pac. Ry. Co., 236 Mo. 54, 139 S. W. 561, the question of pecuniary loss might properly have been submitted to the jury to be considered by them in determining the amount of their verdict along with the facts bearing on the penal phase of the case. But it was not necessary, under that decision, that such pecuniary loss be shown in order that plaintiff might be permitted to recover at all. In the absence of pecuniary loss the plaintiff would have a right to recover on the penal phase of the case alone, as was done here. As to the third point made against this instruction, we see no error in the use of the word "unlawful" as it occurs therein, though it might have been better to omit it. The instruction does not assume that defendant was guilty of a negligent act which caused the death of Miss Niehaus. It merely describes such act as "unlawful" if committed under the circumstances hypothesized in other instructions. This was not incorrect, for the act was undoubtedly "unlawful" if committed under those circumstances. It was unlawful whatever the degree of culpability involved and to so designate it did not express or sug-

gest any degree of culpability or indicate any bias or opinion on the part of the judge in that respect. The court described it, not by way of epithet or denunciation or showing of bias or opinion, but solely in order to make clear that the jury were to inflict a penalty instead of awarding damages. It could not properly have been understood otherwise, or have had any prejudicial effect on the amount of the verdict.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.